**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| FIRST STATE BANK OF NORTHWEST ARKANSAS, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE MCCLELLAND QUALIFIED PERSONAL RESIDENCE TRUST, *et al.,* )<br><br>Defendants. ) | CIVIL ACTION NO. 5:14-CV-130 (MTT) |

## ORDER

Before the Court is the Defendants' motion to dismiss (Doc. 25) the Plaintiff's amended complaint (Doc. 17) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, the motion to dismiss is **DENIED**.

### I.  FACTUAL BACKGROUND

In 2005 and 2006, Defendant Joseph P. McClelland, Jr. took out two loans from First Georgia Community Bank ("First Georgia"). (Doc. 17 at ¶ 7). Between March and June 2008, McClelland made six transfers of real property to Defendant The McClelland Family Limited Partnership ("Partnership") and one transfer of real property to Defendant The McClelland Qualified Personal Residence Trust a/k/a The McClelland Qualified Personal Residential Trust ("Trust").[1] (Doc. 17 at ¶¶ 8-14). The loans went into default on November 17, 2008. (Doc. 17 at ¶ 15).

On December 8, 2008, First Georgia failed and went into receivership by the Federal Deposit Insurance Corporation ("FDIC"). (Doc. 17 at ¶¶ 18-19). The FDIC

---

[1] The Partnership and the Trust are entities created under Georgia law, and Defendant McClelland is a resident of Butts County, Georgia. (Doc. 17 at ¶¶ 2-4).

sued McClelland to recover amounts due on the loans in the United States District Court for the Northern District of Georgia[2] and obtained a judgment against him on February 22, 2011.  (Doc. 17 at ¶ 20).  On December 1, 2011, the FDIC assigned its interest in the loans and the related judgment to the Plaintiff.[3]  (Doc. 17 at ¶ 21).  On March 18, 2013, the Plaintiff obtained an amended final judgment in the Northern District of Georgia case in the amount of $73,983.83 after being allowed to intervene as a plaintiff. (Doc. 17 at ¶ 22).  The judgment remains unpaid in its entirety.  (Doc. 17 at ¶ 26).

    The Plaintiff now seeks to set aside the seven transfers of property identified above, which it contends are fraudulent, as well as damages and injunctive relief pursuant to Georgia's Uniform Fraudulent Transfers Act ("GUFTA"), O.C.G.A. § 18-2-70, *et seq.*, to satisfy its judgment.  The Plaintiff also seeks to impose a constructive trust on the real properties that were fraudulently transferred.  Finally, the Plaintiff requests attorney's fees pursuant to O.C.G.A. § 13-6-11 for stubborn litigiousness in the amount of $3,900.00.

    On May 8, 2014, the Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. 12).  The Court denied the Defendants' motion on May 27, 2014.  (Doc. 19).  The Defendants then filed an answer to the Plaintiff's amended complaint on June 10, 2014.  (Doc. 21).  On July 25, 2014, the Defendants filed a second motion to dismiss.  (Doc. 25).  The Defendants argue (1) the FDIC's claims were not assignable, and (2) the claims are barred by the applicable statute of limitations.  (Doc. 25 at 2).  The Plaintiff contends the motion is procedurally

---

[2] *FDIC v. McClelland*, 1:09-cv-2352-RLV (N.D. Ga.).

[3] First State Bank is a banking corporation created under Arkansas law.  Its principal place of business is in Fayetteville, Arkansas.  (Doc. 17 at ¶ 1).

improper because the Defendants previously filed a motion to dismiss.  In response, the Defendants argue this is the first motion filed by the Partnership and the Trust and suggest the Court can convert the motion into a motion for judgment on the pleadings pursuant to Rule 12(c).[4]

Rule 12(b) provides that "[a] motion asserting any of [the Rule 12] defenses must be made before pleading if a responsive pleading is allowed."  Because the Defendants filed an answer before filing this motion to dismiss, the Defendants have ignored the requirements of Rule 12(b).[5]  *See Leonard v. Enter. Rent a Car*, 279 F.3d 967, 971 n.6 (11th Cir. 2002) ("Under Rule 12(b), [this] motion[] [was] a nullity; by filing an answer, the defendants had eschewed the option of asserting by motion that the complaint failed to state a claim for relief.").  Nevertheless, in the interest of judicial economy, the Court will treat the Defendants' untimely motion to dismiss as a motion for judgment on the pleadings under Rule 12(c).  *See* Fed. R. Civ. P. 12(h); *Keller v. Strauss*, 480 F. App'x 552, 554 n.2 (11th Cir. 2012); *Skrtich v. Thornton*, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002).

## II.  DISCUSSION

### A.  Legal Standard

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on the

---

[4] The Defendants have attached a "Statement of Facts" to the motion to dismiss.  (Doc. 25-2 at 1).  The Court will not consider it at this stage, nor will the Court consider the Plaintiff's response.  (Doc. 27).

[5] The Defendants' argument that this is the first motion to dismiss filed by the Partnership and the Trust is incorrect.  Both Defendants were included as parties to the first motion to dismiss. (Doc. 12 at 1).

pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). "A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Analysis

### 1. Whether the FDIC's Claims Were Assignable

The Defendants argue the Plaintiff does not have standing because the FDIC's claims were not assignable.  The Defendants mainly argue that because Georgia law prohibits the assignment of fraudulent conveyance claims, the FDIC could not assign the claims to the Plaintiff.  (Doc. 25-1 at 4).  The Plaintiff disagrees that Georgia law bars the assignment of fraudulent conveyance claims, but even if it does, the Plaintiff argues Georgia law is preempted by federal law, which does permit the FDIC's assignment.  (Doc. 26 at 5-7).

 "The common law recognizes assignment of property damage claims but not personal injury claims, and O.C.G.A. § 44-12-24 codifies these principles."  *Villanueva v. First Am. Title Ins. Co.*, 292 Ga. 630, 631, 740 S.E.2d 108, 110 (2013).  O.C.G.A. § 44-12-24 provides:

> Except for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property.  A right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned.

Thus, generally speaking, claims involving a property right are assignable; claims for fraud are not.  The Plaintiff argues their claims were assignable because they are based upon an injury to the right to be paid out of Defendant McClelland's assets—that is, the claims are based upon the loss of value to Defendant McClelland's assets resulting from the properties being transferred.  (Doc. 26 at 6).  The Defendants argue such a claim is not assignable because, by definition, it involves an injury arising from fraud.  It involves a "transfer … by a debtor [that] is *fraudulent* as to a creditor."  (Doc. 25-1 at 5) (citing O.C.G.A. §§ 18-2-74(a), 18-2-74(b), 18-2-75(a)).

The Defendants cite two Georgia cases for the proposition that a fraudulent conveyance claim arises out of fraud and thus is not assignable.  (Doc. 25-1 at 5-6).  In *Security Feed & Seed Co. of Thomasville v. NeSmith*, the plaintiff, as assignee of accounts receivable, brought an action against a debtor to recover on an open account, and in the same action, sought equitable relief to set aside an alleged fraudulent transfer made by the debtor.  213 Ga. 783, 102 S.E.2d 37 (1958).  The Georgia Supreme Court held the trial court properly dismissed the request for equitable relief, citing *Marshall v. Means*, 12 Ga. 61 (1852) for the proposition that "[a] bare right to file a bill [in equity] or maintain a suit is not assignable."  213 Ga. at 784, 102 S.E.2d at 37-38.

Unlike the plaintiff in *Security Feed*, the Plaintiff was not assigned a bare right to file suit.  The Plaintiff was assigned the FDIC's interest in two loans and the related judgment against the Defendants.  (Doc. 17 at ¶ 21).  Thus, the Plaintiff's right to sue for a fraud is "merely incidental to a subsisting substantial property which has been assigned, and which is, itself, intrinsically susceptible of legal enforcement."  *Emmons v. Barton*, 109 Cal. 662, 666, 42 P. 303, 303 (1895); *see also Ryan v. Miller*, 236 Mo. 496, 139 S.W. 128, 133 (1911) ("[T]he assignment of a judgment enables the assignee to maintain a suit in equity against the judgment debtor to set aside a prior conveyance of property in fraud of his creditors."); *Nat'l Val. Bank v. Hancock*, 100 Va. 101, 40 S.E. 611, 613 (1902).  *Security Feed* does not control whether O.C.G.A. § 44-12-24 prevents the Plaintiff from bringing a fraudulent conveyance claim pursuant to GUFTA.

In *Feeney v. Decatur Developing Co.*, a bank advanced money to a hay seller with the understanding that the seller's customers would pay the bank upon receipt of hay, and if the customers failed to pay, the seller would reimburse the bank.  47 Ga.

App. 353, 170 S.E. 518, 518 (1933).  The seller defrauded the bank by withdrawing money with no intention of reimbursing the bank, and the plaintiff, as assignee of all the assets of the bank, sued the seller.  The court recognized that a "chose in action arising from a tort is assignable where it involves, directly or indirectly, a right of property."  *Id.* (quoting *Sullivan v. Curling*, 149 Ga. 96, 99 S.E. 533 (1919)).  Yet, because the bank did not have title to the hay and merely advanced the seller money, the court found "there was no right of property involved, either directly or indirectly," and rejected the argument that a right of property was involved simply because the bank was defrauded out of its money.  *Id.*

Although *Feeney* involved a claim arising out of fraud, the presence of fraud was not dispositive.  The court focused on the absence of any right of property.  This is illustrated by the subsequent decision in *Lumpkin v. American Surety Co.,* which also involved a claim arising out of fraud.  69 Ga. App. 887, 27 S.E.2d 412, 420 (1943).  In *Lumpkin*, a bank employee embezzled money from the bank.  The plaintiff, as surety for the bank, paid the bank the amount of loss it sustained by the employee's theft and was assigned all of the bank's rights against the employee in return.  The court began its analysis with the proposition that "a right of action for damage to property or a right of action or chose in action arising from tort which involves, directly or indirectly, a right of property, is assignable."  *Id.* at 421*.*  The court then upheld the bank's assignment of its claim against the employee, holding the right of the bank to recover from the employee was "a right to recover for injury involving the bank's property right in the money."  *Id.* The mere presence of fraud, therefore, does not establish that a claim is not assignable.

It is clear that the Plaintiff's claims involve, directly or indirectly, a right of property.  Defendant McClelland took out two loans from First Georgia.  After the loans went into default and First Georgia went into receivership, the FDIC sued Defendant McClelland on the loans and obtained a final judgment against him.  The FDIC then assigned its interests in the loans and the judgment to the Plaintiff.  Because that judgment remains unpaid in its entirety, the Plaintiff now seeks to set aside transfers of property in order to obtain satisfaction of its debt.  Accordingly, the FDIC's right to recover from the Defendants was a right to recover for injury involving its property right in the loans and related judgment.  And just as in *Lumpkin*, this right to recover was assignable.

Even if O.C.G.A. § 44-12-14 could be read to bar the FDIC from assigning its fraudulent conveyance claim, that reading would conflict with federal law and thus would be preempted.  "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  Accordingly, state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation omitted).

Congress, through the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), granted the FDIC authority to succeed to "all rights, titles, powers, and privileges" of an institution in default and to "transfer any asset or liability of the institution in default."  12 U.S.C. § 1821(d)(2)(A)(i), (G)(i)(II).  Accordingly, FIRREA "provides a mechanism for dealing with financially distressed banks in a way that

preserves their going-concern value." *Iberiabank v. Beneva 41-I, LLC*, 701 F.3d 916, 921 (11th Cir. 2012).  Federal courts have upheld the FDIC's assignment of assets pursuant to FIRREA that would have otherwise been barred by state law anti-assignment statutes.  *See e.g.*, *FDIC v. Bank of Boulder*, 911 F.2d 1466, 1473-74 (10th Cir. 1990); *NCNB Texas Nat. Bank v. Cowden*, 895 F.2d 1488, 1499 (5th Cir. 1990); *FDIC v. Martin*, 770 F. Supp. 623, 626-27 (M.D. Fla. 1991); *FDIC v. Main Hurdman*, 655 F. Supp. 259, 267-68 (E.D. Cal. 1987); *FDIC v. Hudson*, 643 F. Supp. 496, 498 (D. Kan. 1986).  The Court finds that applying O.C.G.A. § 44-12-24 to bar the FDIC from transferring a fraudulent conveyance claim would obstruct the purposes and objectives of Congress in granting the FDIC authority to transfer any asset of an institution in default.  Accordingly, even if O.C.G.A. § 44-12-24 could be read to bar the assignment of the FDIC's fraudulent conveyance claim, FIRREA allows the assignment and thus preempts the Georgia statute.[6]

### 2.  Whether the Claims Are Barred by the Statute of Limitations

The Defendants contend the Plaintiff's claims are barred by both the Georgia statute of limitations under GUFTA and FIRREA's extender statute, which extends the statute of limitations for claims brought by the FDIC.  12 U.S.C. § 1821(d)(14). Regardless of whether the Plaintiff's claims would otherwise be barred by GUFTA's

---

[6] The Defendants' other arguments regarding assignability similarly fail.  The Defendants' arguments that (1) the FDIC does not have authority to preempt state law in disposing of assets and (2) the Plaintiff has presented no evidence that it was given authority to preempt Georgia law both fail because the assignment did not violate state law.  The argument that the FDIC does not have authority to transfer its exclusive federal rights fails because, as explained above, the FDIC's assignment was proper and did not violate federal law.  Because the FDIC's assignment was proper under state and federal law, the argument that the right of action cannot be assigned because it is similar to a derivate action fails.  Finally, the argument that the FDIC's loan sale agreement with the Plaintiff restricts any use of exclusive statutory federal powers fails at this stage of the litigation.  The agreement was not attached to the Plaintiff's amended complaint and will not be considered in ruling on the motion to dismiss.

statute of limitations,[7] the Court finds that the Plaintiff can rely on FIRREA's statute of limitations for contract claims.  Thus, the Plaintiff's claims are not time-barred.

FIRREA's extender statute provides a six-year limitation period for contract claims and a three-year limitation period for tort claims.[8]  12 U.S.C. § 1821(d)(14)(A)(i)-(ii).  The three- and six-year limitation periods begin to run on the date the claim accrues, which is the later of the date the FDIC was appointed receiver and the date on which the cause of action accrued under state law.  12 U.S.C. § 1821(d)(14)(B).  The FDIC became receiver on December 8, 2008, and the Plaintiff filed suit on April 3, 2014.  The Parties do not dispute that if the FDIC had brought this action, and if the six-year statute of limitations for contract claims applies, the action would have been timely filed.  But the Defendants argue the FDIC cannot transfer its exclusive statutory rights under FIRREA.  Therefore, the Court must determine whether the Plaintiff, as an assignee of the FDIC, is entitled to rely on the federal limitations period.

Some federal courts have held that an assignee of the FDIC receives the benefit of the federal limitations period as a matter of federal law.  *See, e.g.*, *UMLIC VP LLC v. Matthias*, 364 F.3d 125, 131-33 (3d Cir. 2004); *FDIC v. Bledsoe*, 989 F.2d 805, 810-12

---

[7] To the extent the state statute of limitations applies, Counts II and III are barred by GUFTA's four-year statute of limitations because the transfers occurred more than four years before the Plaintiff filed suit.  O.C.G.A. § 18-2-79.  Whether Count I is barred depends upon whether the Plaintiff brought it "within one year after the transfer[s] … could reasonably have been discovered by the claimant."  *Cunningham v. Gage*, 301 Ga. App. 306, 307, 686 S.E.2d 800, 801 (2009).  The Defendants contend that Count I is time-barred because the recording of the deeds in 2008 provided sufficient notice to start the running of the one-year statute of limitations.  While Georgia law does not address the issue, many courts have held that the one-year period begins to run upon discovery of the fraudulent nature of the transfer.  *See Schmidt v. HSC, Inc.*, 131 Hawai'i 497, 505-10, 319 P.3d 416, 424-29 (2014).

[8] Under both sections, the applicable statute of limitations period is the longer of (1) the period applicable under state law or (2) the three- or six-year period.  12 U.S.C. § 1821(d)(14)(A).

(5th Cir. 1993); *Mountain States Fin. Res. Corp. v. Agrawal*, 777 F. Supp. 1550, 1552

(W.D. Okla. 1991).

> The common grounds upon which these courts have reached those
> results are: (1) the common law of assignments, as evidenced principally
> in Restatement (Second) of Contracts § 336 which establishes the
> principle that the assignee stands in the shoes of the assignor; and (2)
> policy considerations underlying the necessity of assuring the broadest
> possible market for the assets of failed banks and federally insured
> depository institutions.

*Wamco, III, Ltd. v. First Piedmont Mortg. Corp.*, 856 F. Supp. 1076, 1085 (E.D. Va.

1994).  But other federal courts have rejected this approach, instead relying on

*O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) for the proposition that state law

should determine if an assignee of the FDIC can rely on the federal limitations period.

*See Joslin v. Grossman*, 107 F. Supp. 2d 150, 155-57 (D. Conn. 2000); *LR1-A Ltd.*

*P'ship v. Patterson*, 1997 WL 1146319, at *2-3 (D.N.H.); *Remington Invs., Inc. v.*

*Kadenacy*, 930 F. Supp. 446, 450-51 (C.D. Cal. 1996).  Georgia law is clear: "an

assignee 'stands in the shoes' of the assignor and obtains no greater rights than the

assignor possessed at the time of assignment."  *S. Telecom, Inc. v. TW Telecom of Ga.*

*L.P.*, 321 Ga. App. 110, 114, 741 S.E.2d 234, 237 (2013).  The rights of the assignee

"are neither enhanced nor diminished by assignment."  *Id.*  Therefore, under either

federal or state law, the Plaintiff, as assignee of the FDIC, is entitled to rely on the

extender statute.

Having determined the Plaintiff is entitled to the benefit of the federal limitations

period, the Court must determine whether a fraudulent conveyance claim under GUFTA

is a "contract claim" or a "tort claim" for purposes of the extender statute.  The Plaintiff

argues the Court should follow the Eleventh Circuit's decision in *United States v. Moore*,

-11-

which held that a fraudulent conveyance claim is a "quasi-contract claim" and thus is governed by a contract statute of limitations period.[9]  968 F.2d 1099, 1101 (11th Cir. 1992).  Although the Eleventh Circuit did not provide any analysis, it cited the Ninth Circuit's analysis of a fraudulent conveyance claim in *United States v. Neidorf*, 522 F.2d 916, 918-20 (9th Cir. 1975).  There, the Ninth Circuit noted that a fraudulent conveyance claim, even when a debtor's intent is relevant, is not founded upon a tort: "The fraud, such as it is, is only incidental to the right of the creditor to follow the assets of the debtor and obtain satisfaction of the debt.  The gravamen of the cause of action … is the ordinary right of a creditor to receive payment …." *Neidorf*, 522 F.2d at 918 (citations omitted).  In finding the claim to sound in quasi-contract rather than tort, the Ninth Circuit reasoned that the remedy for a fraudulent conveyance claim is restitution of benefits received, whereas in tort, the remedy is compensatory damages.  *Id.*

In response, the Defendants argue *Moore* relied on federal common law, and after the Supreme Court's decision in *O'Melveny & Myers*, the use of federal common law is only appropriate in rare circumstances.  Looking to Georgia law, the Defendants argue a fraudulent conveyance claim under GUFTA sounds in tort because "the Plaintiff is pursuing a breach of a duty found in the GUFTA rather than the contract and … the remedy sought is an avoidance of a transfer." (Doc. 25-1 at 16).  The Defendants cite *In re International Management Associates, LLC*, where the bankruptcy court classified a fraudulent transfer involving an investor in a Ponzi scheme as a tort for purposes of

---

[9] Notably, FIRREA's statute of limitations period was not at issue in *Moore*.  Rather, the statute in question was 28 U.S.C. § 2415, which was, and remains, the statute of limitations for "every action for money damages" brought by the United States.  It provides: "[S]ubject to the provisions of section 2416 of this title, ... every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues ...." *Moore*, 968 F.2d at 1101 (citations omitted).

Georgia's choice of law rules.  495 B.R. 96 (N.D. Ga. 2013).  In finding a fraudulent transfer action more akin to a tort claim than a contract claim, the court noted that the rights and liabilities of a Ponzi scheme victim are based on the application of principles of fraud and equity, rather than on the contractual terms of the victim's "investment."  *Id.* at 105-06.  The court also noted the focus on "the improper and fraudulent character of the debtor's conduct and the injury caused to [its] creditors."  *Id.* (quoting *Terry v. June*, 420 F. Supp. 2d 493, 503 (W.D. Va. 2006)).

It appears the Eleventh Circuit in *Moore* relied on federal law, and the Ninth Circuit in *Neidorf* held that "the characterization of the claim as one in tort, contract or quasi-contract must … be a matter of federal law since the uniform limitations established by the statute [28 U.S.C. § 2415] would be compromised if limitations varied according to the labels attached to identical causes of action by different states."  522 F.2d at 919 n.6.  The Supreme Court's decision in *O'Melveny & Myers* suggests this characterization should not be made as a matter of federal law, for "matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law."  512 U.S. at 85.  Moreover, the Eleventh Circuit has since noted that Congress "did not put much stress on uniformity" in enacting Section 1821(d)(14)(A) because "Congress permits the application of state statutes of limitations to the extent they exceed the prescribed federal period."  *Resolution Trust Corp. v. Artley*, 28 F.3d 1099, 1103 (11th Cir. 1994).  Therefore, whether a fraudulent conveyance claim under GUFTA is a "contract claim" or a "tort claim" for purposes of Section 1821(d)(14)(A) should be made by reference to Georgia law.

Georgia law does not provide clear guidance regarding how to classify a fraudulent conveyance claim.  Georgia law defines a tort as "the unlawful violation of a private legal right other than a mere breach of contract, express or implied."[10]  O.C.G.A. § 51-1-1.  An implied contract can either be implied in fact or implied in law.  *Eaves v. J.C. Bradford & Co.*, 173 Ga. App. 470, 471, 326 S.E.2d 830, 831-32 (1985).  "Quasi contracts, or contracts implied in law, are obligations imposed by law as duties quite independent of the assent of the party held to be bound, and often in spite of his earnest dissent."  *Butts Cnty. v. Jackson Banking Co.*, 129 Ga. 801, 60 S.E. 149, 152 (1908).  The measure of recovery for a quasi-contract "is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff."  *Id.*

The claims here began as contract claims.  After Defendant McClelland defaulted on the two loans he took out from First Georgia, the FDIC, standing in the shoes of First Georgia, filed suit and obtained a judgment against Defendant McClelland.  The Plaintiff, standing in the shoes of the FDIC, now seeks to recover on that judgment by setting aside transfers of property.  The law provides a creditor with such a remedy in the event that a debtor's conduct subverts its right to payment.  This obligation, imposed by law, does not change the contractual basis of the parties' relationship.  Rather, this obligation supplements the contractual remedies available to a creditor.  Such an obligation is aptly characterized as a quasi-contract under Georgia law.  *Accord Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir. 1967) ("[T]he essential basis of the statutory proceeding to set aside a fraudulent conveyance is an indebtedness that could

---

[10] "A tort may also be the violation of a public duty if, as a result of the violation, some special damage accrues to the individual."  O.C.G.A. § 51-1-1.

ordinarily be enforced in an action for contract, and … the nature of the claim is in no way changed by the form of the procedure."); *FDIC v. Hinch,* 879 F. Supp. 1099, 1108 (N.D. Okla. 1995)*; FDIC v. Martinez Almodovar*, 671 F. Supp. 851, 871 (D.P.R. 1987). Accordingly, the Plaintiff is entitled to rely on the six-year limitations period in Section 1821(d)(14)(A)(i).  Because this action was filed within six years from the FDIC's appointment as receiver on December 8, 2008, the action is not barred by the applicable statute of limitations.


### III. CONCLUSION

For the reasons explained above, the Defendants' motion to dismiss (Doc. 25) is **DENIED.**

**SO ORDERED**, this 2nd day of December, 2014.


S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT